**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ludivine Farouault, et al.,<br><br>          Plaintiffs,<br><br>vs.<br><br>American Aviation Incorporated, et al.,<br><br>          Defendants. | No. CV-24-08159-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendant Go West Tours Incorporated's ("Defendant Go West") Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 37), Plaintiffs' Response (Doc. 40), and Defendant Go West's Reply (Doc. 41). The Court now rules as follows.

**I.   BACKGROUND**

This case arises out of an airplane crash that took place in Cococino County, Arizona, on August 13, 2022. (Doc. 29 at 4). The passengers were French tourists who took a sightseeing flight tour on a charter plane over Lake Powell. (*Id.* at 4–6). The passengers' trip was organized with Defendant Go West, who contracted the flight tour with Defendant American Aviation Incorporated ("Defendant American Aviation"). (*Id.* at 5). Plaintiffs allege that Defendant American Aviation had a history of flight crashes requiring investigation—including a 2014 crash that resulted in the death of a French citizen—and numerous violations of state and federal flight regulations. (*Id.* at 5). Plaintiffs initially purchased their tour package with Defendant Go West through a travel agency,

TUI France. (*Id.* at 6). Defendant Go West's employee, Defendant Dame Seck, collected and confirmed various information about the passengers to Defendant American Aviation, and Defendant Go West transported the passengers to the sightseeing flight. (*Id.* at 6–7). The flight crashed into Lake Powell and caused the death of two passengers, Lionel Farouault and Francois Adinolfi, and caused physical injuries to Plaintiffs Ludivine, Emeline, and Clarence Farouault and Charlene Papia. (Doc. 29 at 7).

On August 9, 2024, Plaintiffs filed suit in federal court pursuant to 28 U.S.C. § 1332(a), bringing various negligence claims arising from their personal injuries and the wrongful deaths of decedents. (Doc. 1). Along with Plaintiffs Ludivine, Emeline, and Clarence Farouault and Charlene Papia, Plaintiffs include Marguerite Farouault, Claude Adinolfi, and Christine Duputel, relatives of the deceased passengers. (*Id.* at 1; Doc. 29 at 2). Defendant Go West moved to dismiss Plaintiffs' claims against it (Doc. 21), and on November 26, 2024, the Court granted Defendant Go West's Motion and dismissed Plaintiffs' claims against it with leave to amend. (Doc. 28). On January 7, 2025, Plaintiffs filed a First Amended Complaint (Doc. 29), and Defendant Go West subsequently filed the present Motion to Dismiss (Doc. 37).

**II.     LEGAL STANDARD**

"To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8." *Jones v. Mohave Cnty.*, No. CV 11-8093-PCT-JAT, 2012 WL 79882, at *1 (D. Ariz. Jan. 11, 2012); *see also Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 203 (5th Cir. 2016) (Rule 12(b)(6) provides "the one and only method for testing" whether pleading standards set by Rule 8 and 9 have been met); *Hefferman v. Bass*, 467 F.3d 596, 599–600 (7th Cir. 2006) (Rule 12(b)(6) "does not stand alone," but implicates Rules 8 and 9). Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal theory. *In re Sorrento Therapeutics,*

2

*Inc. Sec. Litig.*, 97 F.4th 634, 641 (9th Cir. 2024) (citation omitted). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). "Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation." *Jones*, 2012 WL 79882, at *1 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## III.   DISCUSSION

Defendant Go West moves to dismiss Plaintiffs' Count II – Negligence, Negligent Infliction of Emotional Distress, and Gross Negligence Claims. (Doc. 37). Similar to Defendant Go West's Motion to Dismiss Plaintiff's initial Complaint, the present Motion primarily argues that Plaintiffs' negligence and gross negligence claims must be dismissed because it did not owe a duty of care to Plaintiffs as an agent. (*Id.*).

"To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007). A plaintiff must establish the existence of a duty of care as a threshold matter before a negligence action can be maintained. *Id.* Duty is an obligation requiring the defendant to conform to a certain standard of conduct in order to protect others against unreasonable risks. *Ontiveros v. Borak*, 667 P.2d 200, 204 (Ariz. 1983). The Arizona Supreme Court has recognized two factors in evaluating the existence of a duty: (1) the relationship between the parties and (2) public policy considerations. *Gipson*, 150 P.3d at 231–33. While no special or direct relationship is required, duties of care based on relationship can be based on contract, family relationships, or conduct undertaken by the defendant. *Id*. Public policy creating a duty can arise from a statute prohibiting conduct if the statute is designed to

3

protect the class of persons in which the plaintiff is included against the risk of the type of harm which in fact occurs as a result of the violation. *Id*. at 233.

### a. Duty as a Travel Agent

Plaintiffs' amended Complaint asserts that Defendant Go West owed a duty of care to Plaintiffs arising out of an agency relationship—specifically, that Defendant Go West was Plaintiffs' travel agent. (Doc. 29 at 13). Defendant argues that Plaintiffs have not set forth facts demonstrating that Defendant or its employee Dame Seck were Plaintiffs' agents under general agency principles (Doc. 37 at 5) or travel agents under Arizona law (*id.* at 7, 9).

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Goodman v. Physical Res. Eng'g, Inc*., 270 P.3d 852, 856 (Ariz. Ct. App. 2011) (quoting Restatement (Third) of Agency § 1.01 (2006)). In determining whether an agency relationship exists, courts consider the relation of the parties to one another and to the subject matter, as well as their acts and pattern of conduct. *Phx. W. Holding Corp. v. Gleeson*, 500 P.2d 320, 325–26 (Ariz. Ct. App. 1972). Specifically, "a court must find that the principal had the right to control the purported agent's conduct for the transaction at issue." *Urias v. PCS Health Systems, Inc.*, 118 P.3d 29, 36 (Ariz. Ct. App. 2005); *Bultemeyer v. Sys. & Servs. Techs., Inc.*, No. CV12-0998-PHX-DGC, 2012 WL 4458138, at *6 (D. Ariz. Sept. 26, 2012) ("Agency 'results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" (quoting Restatement (First) of Agency § 1 (1933))).

To that end, "[g]enerally, commercial transactions do not create a fiduciary relationship unless one party agrees to serve in a fiduciary capacity." *Cook v. Orkin Exterminating Co., Inc.*, 258 P.3d 149, 152 (Ariz. Ct. App. 2011). Under Arizona law, a commercial services contract where a customer relies on a service provider's expertise and

specialized knowledge does not create a fiduciary relation or oblige a service provider to act for the customer's benefit. *Id.* "The law does not create a fiduciary relation in every business transaction involving one party with greater knowledge, skill, or training, but requires peculiar intimacy or an express agreement to serve as a fiduciary." *Id.* (citations omitted).

The Court is aware of only one case in which an Arizona court has addressed the issue of the duty of care owed by travel professionals in a similar context: *Maurer v. Cerkvenik-Anderson Travel, Inc.*, 890 P.2d 69 (Ariz. Ct. App. 1994).[1] Applying general principles governing agency relationships, the Arizona Court of Appeals recognized that travel agents owe a duty of care to their principals, including a duty to warn:

> An agent who handles travel and vacation plans is a special agent of the traveler for purposes of that one transaction between the parties . . . . And this is so even though the agent's compensation may be paid by the company to whom she steers the business, much like an advertising agent . . . .
>
> [The travel agent has] a duty to act with the care, skill and diligence a fiduciary rendering that kind of service would reasonably be expected to use . . . . This agency relationship also impose[s] a duty to promptly communicate to [the] principals confirmations and all other relevant information about the proposed travel plans and tours which would help them protect themselves from harm or loss.

*Id.* at 72 (quoting *Douglas v. Steele*, 816 P.2d 586, 589 (Okla. Civ. App. 1991)). In that case, the travel agency defendant's business included "organizing, promoting, selling and operating student vacation tours." *Id.* at 70. It "set[] the itinerary, arrange[d] for transportation and lodging and provide[d] information relating to the students' comfort, convenience and safety on the tour" for customers that purchased tour packages from it. *Id.* While *Maurer* is helpful to understand what the duty of care entails, it fails to articulate the circumstances in which a duty arises beyond its reliance on "principles governing

---

[1] The subheading in *Maurer* examining the facts of the case reads "Duty of Travel Agents/Tour Operators." *Maurer v. Cerkvenik-Anderson Travel, Inc.*, 890 P.2d at 71. This is the only time the term "tour operators" is mentioned in the case, which primarily focuses on principles governing agency relationships. *Id.* Thus, the Court does not find that *Maurer* stands for the principle that tour operators unconditionally owe a duty of care arising out of an agency relationship absent other facts establishing an agency relationship.

5

agency relationships." *Id.* at 71.

The parties point to two Ninth Circuit cases that apply California law, which are non-binding and shed limited light on this issue. In *Rookard v. Mexicoach*, the Ninth Circuit found that the existence of an agency relationship was a question of fact where the tour bus company defendant described its relationship with customers as being an "agent for the passengers in all matters relating to . . . transportation"; "held itself out to the public as providing information and advice regarding travel"; and admitted that it acts on behalf of its passengers with respect to ticketing. *Rookard v. Mexicoach*, 680 F.2d 1257, 1261 (9th Cir. 1982). Thus, Plaintiffs' reliance on this case is unpersuasive as *Rookard* is factually distinguishable—Defendant Go West did not describe itself as the Plaintiffs' agent—and because, as noted above, providing specialized knowledge and advice does not establish an agency or fiduciary relationship under Arizona law. *See Cook*, 258 P.3d at 152. Defendant also directs the Court's attention to *Harris v. Duty Free Shoppers Ltd. Partnership*, 940 F.2d 1272 (9th Cir. 1991). In that case, the Ninth Circuit, analyzing general agency principles, found that an agency relationship did not exist between tour guides and tourists where the parties were not in an employment relationship, the tour guides did not hold themselves out as experts, and the guides were not "at all times subject to the control" of the tourists. *Id.* at 1275.

Here, the existence of a duty owed by Defendant Go West largely turns on whether Defendant Go West was a travel agent of Plaintiffs or a mere tour operator. Defendant argues that TUI, not Go West, was the travel agent owing a fiduciary duty to Plaintiffs; that Defendant Go West was merely a tour operator and ticket-taker; and that it never assented to an agency relationship. (Doc. 37 at 8). Plaintiffs argue that because Defendant Go West "assumed the role of a tour guide and escort for the flight over Lake Powell with special knowledge and experience of the destination Plaintiffs would be visiting" and "advertised, recommended, encouraged, and arranged the Lake Powell flight," it and Defendant Dame Seck are more than mere ticket agents and instead owe Plaintiffs a duty as their travel agents. (Doc. 40 at 2).

Due to the lack of case law illuminating the line between "travel agent" and "tour operator," the Court will turn to general agency principles for guidance in determining the relationship between Plaintiffs and Defendant Go West. Plaintiffs purchased the tour package from a travel agency, TUI France, which subsequently listed Defendant Go West as the local contact, "correspondent," and "prestataire" or service provider, in a purchase receipt.[2] (Doc. 29 at 6). TUI provided the itinerary, which did not include the optional flight excursion, for Plaintiffs' tour of the western United States. (*Id.* at 14). Plaintiffs' FAC alleges that Defendant Go West holds itself out to the public as a "Destination Management Compan[y] and Tour Operator." (*Id.* at 11).

Defendant Go West's employee, Defendant Dame Seck, presented himself as a "tour guide," offered the Lake Powell sightseeing flight as an optional excursion, and collected the names and weights of tourists who signed up for the flight excursion. (*Id.* at 6). Plaintiffs further allege that Defendant Dame Seck provided advice to the tourists and that the tourists "trusted Mr. Seck and sought his advice" and relied on his experience, knowledge, and recommendation. (*Id.* at 19). However, as noted above, in Arizona, a business transaction or commercial contract only creates an agency or fiduciary relationship when one party agrees to serve in a fiduciary capacity. *See Urias*, 118 P.3d at 35. "Mere trust in another's competence or integrity does not suffice" to create a fiduciary relationship. *Standard Chartered PLC v. Price Waterhouse*, 945 P.2d 317, 335 (Ariz. Ct. App. 1996), *as corrected on denial of reconsideration* (Jan. 13, 1997).

Despite the addition of factual allegations relating to Defendants Go West and Dame Seck, including allegations about their promotion of the Lake Powell flight (*id.* at 15), Plaintiffs' FAC still fails to allege any manifestation of an agency relationship between the parties. *See generally Barkhurst v. Kingsmen of Route 66, Inc.*, 323 P.3d 753, 758 (Ariz.

---

[2] Plaintiffs subsequently allege that "[t]he first time the tour members heard of Go West and the first time they were offered the optional flight over Lake Powell was through an announcement made and handout given by Mr. Seck when they first boarded the Go West tour bus." (Doc. 29 at 14). Regardless of when Plaintiffs first became aware of Go West's role as tour operator, it is clear from the FAC that Plaintiffs did not contract with Defendant Go West for its travel plans.

7

Ct. App. 2014) (finding no duty of care for promoter of event that did not control, organize, or supervise the promoted event held by third parties at which plaintiff was injured); *Standard Chartered*, 945 P.2d at 335 (finding no fiduciary relationship imposing duty of care where defendant "pitched hard" and attempted to persuade plaintiff to pursue business opportunity). The facts do not show that Defendant Go West agreed to serve Plaintiffs in a fiduciary capacity, or that Plaintiffs exercised or had the right to exercise any degree of control over Defendant Go West. Indeed, the facts included in the FAC demonstrate that the Plaintiffs and other tourists did *not* have the right to control Defendant Go West's conduct or that Defendant Go West manifested to act on Plaintiffs' behalf and subject to their control as related to travel plans: for example, Plaintiffs allege that when some of the tourists did not want to continue the tour, Defendant Go West did not assist them or organize their travel. (Doc. 29 at 17). Plaintiffs also allege that "[t]he tour participants did not take the initiative to take this flight," which further indicates that they were not acting as principals directing an agent to act on their behalf and subject to their control. (*Id.* at 15).

Plaintiffs' Response argues that discovery of the contract agreements between Defendant Go West, Plaintiff's travel agency TUI, Defendant Dame Seck, and American Aviation is needed "to determine the exact contours of the relationships between the parties, including specifically who was principal in the agency relationship, the parties' mutual expectations, and the scope of the duty owed." (Doc. 40 at 6). To surpass the motion to dismiss stage, Plaintiffs must allege facts that plausibly give rise to the inference that Defendant Go West was an agent of the Plaintiffs and thus owed them a duty of care. Nothing in the FAC indicates that Plaintiffs controlled Defendant Go West's conduct beyond use of Defendant Go West as a conduit to relay their names and weights in order to purchase the flight excursion. *See generally State Farm Ins. Cos. v. Premier Manufactured Sys., Inc.*, 172 P.3d 410, 414 (Ariz. 2007) ("The mere purchase of a product from a supplier does not establish a master-servant or principal-agent relationship between the buyer and seller.").

Ultimately, Plaintiffs fail to demonstrate that they manifested assent for Defendant Go West to act on their behalf and subject to their control and that Defendant Go West, in kind, manifested assent to act on their behalf and subject to their control. Because Plaintiffs have failed to purport facts showing that a principal-agent relationship existed, they have not alleged facts sufficient to establish that Defendant Go West owed Plaintiffs a duty of care arising out of an agency relationship.

### b. Assumption of Duty of Care

Plaintiffs assert that "[t]our operators may also be liable for additional duties undertaken or assumed and negligently performed . . . such as a tour guide who negligently directs the tour group into a hazardous situation" and allege that Defendant Go West assumed a duty to the passengers when they offered the flight over Lake Powell. (Doc. 29 at 22–23).

Arizona follows the Restatement (Second) of Torts § 323 in assessing whether an individual has assumed a duty of care and, if so, the extent of his or her liability. *Lloyd v. State Farm Mut. Auto. Ins. Co.*, 860 P.2d 1300, 1303 (Ariz. Ct. App. 1992). Section 323 provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) His failure to exercise such care increases the risk of such harm, or
>
> (b) The harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1965). This assumption of duty is also known as the "Good Samaritan" doctrine. *Bergdale v. Countrywide Bank FSB*, CV-12-8057-PCT-GMS, 2013 WL 105295, at *7 (D. Ariz. Jan. 9, 2013). This doctrine is inapplicable to the current case, as offering tour guide services and promoting a flight excursion are not for the specific purpose of protecting another or their things from harm. In sum, while it may be true that

9

a party may breach a duty by negligently directing them to a hazardous condition, Plaintiffs have not established that Defendants owed them such a duty in the first place, either by undertaking or assuming such a duty or otherwise.

### c. Vicarious Liability for Dame Seck's Conduct

Plaintiffs also allege that Defendant Go West is vicariously liable for Defendant Dame Seck's conduct. (Doc. 29 at 11). In Arizona, to establish that a defendant is vicariously liable for its employee's negligence, a plaintiff must first establish the employee's conduct was negligent. *Debruyn v. Hernandez*, No. CV-17-01424-PHX-DJH, 2019 WL 2359247, at *3 (D. Ariz. June 4, 2019) ("Under Arizona law, dismissal of the negligence claim against the employee necessitates dismissal of the vicarious liability claim against the employer."). Furthermore, a plaintiff must show that the defendant and employee were in a principal-agent relationship and that the employee was acting within the scope of employment when its allegedly negligent conduct occurred. *Id.*; *Engler v. Gulf Interstate Eng'g, Inc.*, 280 P.3d 599, 601 (Ariz. 2012).

As noted above, Plaintiffs have not established that Defendant Go West nor Defendant Dame Seck owed a duty of care arising out of a principal-agent relationship. The FAC does not allege facts that give rise to the plausible inference that Plaintiffs assented to Defendant Seck that he shall act on their behalf and subject to their control and that Defendant Seck consented to such control. Taking the facts in the FAC as true, Plaintiffs relied on Defendant Seck's recommendation to take the Lake Powell flight excursion and Defendant Seck expressed remorse over giving the recommendation. (Doc. 29 at 18–19, 23). But these facts, without facts showing a reciprocal manifestation of assent to be in a principal-agent relationship, do not establish a duty of care arising out of an agency relationship. Nor do these facts demonstrate that Defendant Seck assumed a duty of care under the Good Samaritan doctrine by undertaking services that were "necessary for the protection of [Defendants'] person." Restatement (Second) of Torts § 323 (1965). As such, Plaintiffs' negligence claims against Defendant Go West cannot proceed on a theory of vicarious liability for Defendant Seck's actions.

### d. Negligent Infliction of Emotional Distress

Defendant Go West seeks to dismiss all claims of the FAC against it. (Doc. 37 at 1). However, the Motion does not provide an argument for the dismissal of Plaintiffs Charlene Papia and Ludivine, Emeline, and Clemence Farouault's claim for Negligent Infliction of Emotional Distress. Under Arizona law,

> [n]egligent infliction of emotional distress requires that the plaintiff witness an injury to a closely related person, suffer mental anguish that manifests itself as a physical injury, and be within the zone of danger so as to be subject to an unreasonable risk of bodily harm created by the defendant.

*Villareal v. State, Dep't of Transp.*, 774 P.2d 213, 220 (Ariz. 1989). Although an action for negligent infliction of emotional distress does not expressly require proof of a duty, it "requires that there be an act that results . . . negligently, in another's emotional distress." *Doe I by & through Fleming & Curti PLC v. Warr*, 566 P.3d 342, 352 (Ariz. Ct. App. 2025). Here, the underlying alleged act against Defendant Go West in the FAC is its alleged breach of duty—the failure to warn and negligent selection of a contractor where Defendant Go West had a duty to warn and act with reasonable care. *See id.*; (Doc. 29 at 19). As Plaintiffs have not sufficiently alleged facts from which the Court can plausibly infer that Defendant Go West owed a duty to Plaintiffs that it subsequently breached, Plaintiffs have not sufficiently alleged an underlying "act" that negligently resulted in Plaintiffs Charlene Papia and Ludivine, Emeline, and Clemence Farouault's emotional distress.

### IV. CONCLUSION

All told, "whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A district court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

While Plaintiffs only need to allege enough facts to "plausibly give rise to an

entitlement to relief," that has not occurred here. *Iqbal*, 556 U.S. at 679. Specifically, Plaintiffs have not alleged facts that, taken as true, demonstrate that Defendant Go West owed them a duty arising out of an agency relationship, assumption of a duty, or vicarious liability, and as such, Plaintiffs' negligence and gross negligence claims against Defendant fail. Additionally, Plaintiffs Charlene Papia and Ludivine, Emeline, and Clemence Farouault failed to allege an underlying act committed by Defendant Go West that resulted in the negligent infliction of their emotional distress. Plaintiffs have had two chances to plead their claims. The Court need not continue to grant leave to amend in such circumstances. *See Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir.1990) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint."). Thus, Plaintiffs' claims against Defendant Go West will be dismissed without leave to amend. Accordingly,

**IT IS ORDERED** that Defendant Go West Tours Incorporated's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 37) is **granted**. Plaintiffs' Count II: Negligence, Negligent Infliction of Emotional Distress, and Gross Negligence against Defendant Go West Tours, Incorporated is **dismissed with prejudice** and **without leave to amend**.

Dated this 15th day of July, 2025.

Honorable Steven P. Logan
United States District Judge